My name is Christine Dahl, and I'm here on behalf of Mr. Richard Sanders, who is challenging the denial of his habeas corpus petition. He sought to have a new trial when his trial attorney failed to bring the only eyewitness to the fight between himself and his adult son that resulted in what he contended was an accidental discharge of an antique firearm. It was Mr. Sanders' theory of defense that he was attempting to unload the firearm because of an imminent threat posed by his son when the fight concluded. His son had drawn a straightedge razor during the fight against his father and left the apartment taking the razor with him. Ms. Smith could have corroborated both Mr. Sanders' trial testimony and Mr. Piotr, the son's trial testimony. This case is a bit unusual because the son admitted to the jury that he had lied to the grand jury and had falsely accused his father of deliberately discharging the firearm at him because he was mad after the fight because of the physical altercation that they had. Now, in Riley, this court reversed the denial of habeas relief in a situation very similar to our case. In that situation, there was a missing witness and this court reviewed how that testimony would have affected the reliability of the verdict had the jury credited the testimony. Do I understand correctly that in Riley, a declaration was submitted to the judge and the declaration was more or less assumed to be true? There was no testimony in Riley. It was based on a declaration. That's correct. Now, in our case, there was a hearing for the state judge and the state judge heard Ms. Smith testify by phone. She testified by telephone. She was subject to cross-examination. That's correct. And the result of the hearing was the judge said she's not credible. That's correct. Isn't that a big difference between our situation and Riley? That is the error that the post-conviction court committed. The post-conviction court cannot sit as a 13th juror and absent something that would make the court conclude that that witness's testimony is inadmissible due to incompetence of the witness, the proper test, like was applied in Riley, is to weigh the effect on the verdict had the jury credited that testimony. Interestingly, the state argued in the state post-conviction trial that Ms. Smith's testimony was cumulative, not that it was not worthy of belief, but it was cumulative to the son's trial testimony, which was impeached by his statements at the time of the event to the police. They did not argue that she was not credible. They have latched on to that finding as an attempt to preserve the conviction. The other problem with the state's argument in this case is that focusing solely on some minor inconsistencies between Ms. Smith's testimony and the other witnesses doesn't accord the proper analysis of the relevance of the testimony. She could have told the jury how the fight started. Mr. Piotr didn't remember who threw the first punch, and Mr. Sanders testified that it was Mr. Piotr who threw the first punch. She could have established without impeachment that Mr. Piotr drew the straightedge razor on his father, and that would have supported the requested jury instruction on choice of evils. When that was denied, defense counsel conceded his client's guilt on the felon in possession charge. The jury returned a 12-0 verdict on that. On the unlawful discharge of the weapon charge, it was a split verdict, 10-2, and Strickland requires looking at the totality of the evidence. I don't think this case can be distinguished from Riley. Is that true with regard to the felon in possession charge? Yes. What is it that raises doubt about a conviction for felon in possession based on the additional testimony? Well, the trial court rejected defense counsel's request for the choice of evil instruction because there was not sufficient evidence of imminence of threat of harm. In this case, the jury knew that Smith was there and could have drawn an adverse inference from what trial counsel and the prosecutor presented. They knew that she was an independent witness. They knew that she was in jail at the time of the trial, and the prosecutor exploited her absence several times, and particularly exploited the promise in opening that the jury would hear a self-defense instruction and hear the choice of evil's instruction. In fact, he opened his closing argument with noting that absence. The reason the self-defense charge was not the instruction wasn't given. Wasn't the story of the defendant that the son had already left the house? That's correct. And what was the imminent danger? The son took the straight-edge razor with him, and tempers had flared to the point where Mr. Sanders was afraid that if he and Ms. Smith left the apartment, which was belonging to a friend of his, that Mr. Piotr would have the opportunity to go back and arm himself with this loaded weapon. If the defendant's testimony on that subject wasn't enough to get a choice of evil instruction, why would the additional testimony of the second person to the same effect be enough to avoid the instruction? Without Ms. Smith, I think that the equilibrium of evidence… Well, I can understand why it wouldn't be enough for the jury. It's important on an issue to have the testimony of another witness. I understand that. But I'm saying as far as entitlement to an instruction, if the district court was simply wrong in not giving a choice of evil instruction, that's one thing. But what I have little trouble with is how the second person telling the same story gives you an entitlement to an instruction that otherwise you wouldn't be entitled to. Ms. Smith testified that Mr. Sanders was attempting to unload the weapon simultaneously with Mr. Piotr's exiting of the apartment. And the prosecutor's theory of the case was that Mr. Piotr ran out of the apartment and was completely gone. Ms. Smith's testimony was different than that, different than the state's theory. What was Mr. Sanders' testimony? That he went to unload the weapon as Mr. Piotr left the apartment and that they had their backs to each other and he didn't see whether his son was out of the apartment. And the district court said that's not enough to get a choice of evil instruction. That's correct. And your story is the same as Mr. Sanders'. Yes. So the court's ruling would have been the same. It may have been, but I think that her testimony would also have avoided the negative inference that could have been drawn by the jury from her absence. There were several times that the litigants at trial made reference to her and the police officer that testified said that he didn't find a razor in the apartment and that Smith was the only person at the time of the incident who made reference to the razor. And the inference from that is she's not here. She's not here because that would be unhelpful testimony. Maybe she made it up. She could also have supported Mr. Sanders' testimony that his son was drunk at the time and belligerent, that he started the fight. What I have difficulty with is seeing, you know, I can understand the feeling of choice of evil instruction. I can understand that issue. What could the jury have, on what basis could they have acquitted the defendant of the count of felony possession? What is the argument to the jury on that count? Well, frankly, the closing argument of defense counsel consisted of conceding his client's guilt. Now, that was not a claim of ineffectiveness that was exhausted in the state court, but I believe, and I see my time is up, if I may conclude this question. I don't think defense counsel would have conceded his client's guilt. He was left without anything to explain, to support his client's position that it was an accidental discharge and that he was justified in trying to unload the weapon. Thank you. Good morning. May it please the Court. My name is Kathy Sigel. I'm representing Respondent David Cook. I'll start with the last question. The only way for Mr. Sanders to have avoided a conviction of felony possession, because by his own testimony he admitted using the gun, attempting to unload it in his version of events, would be if he had prevailed on his choice of evils defense. And I think, Your Honor, you have it exactly right that the evidence at the trial would not have supported the finding or giving you the instruction of choice of evils. The son had already left the apartment. The notion that he might go back again. Didn't say he'd already left the apartment. Was her testimony in the telephone conference, telephone testimony, that he was already outside of the apartment or that he was leaving the apartment or exactly what? Her testimony is set out on that point on page 23 of the red brief. And her testimony was that he was gone. She didn't know where he was. She thought he left to give his father a chance to cool down or maybe to go get help. It felt like he left is one of the things she said. She felt that he left to let everything cool down. She didn't know where he was. So what we have here is not an imminent threat. We have a speculative threat that perhaps if they leave, the son might somehow get past them back into the apartment, get the gun and then pursue them after they're in their car and leaving, I guess. So the choice of evils is just a total red herring here. I think that the trial court in this case correctly did not give that instruction. That's an issue that could have been raised on direct appeal. Off the top of my head, I don't remember if it was, but it's not. Her testimony would not have added anything to that part of the defense case. You think that a jury that acquitted him the first time and found him was accidental, but still was convicted on the second? I think they didn't have any way not to convict on the felon in possession, really. Even if he went to get the gun in order to unload it? In order to unload it doesn't make any difference under Oregon law for felon in possession. If you touch that gun and you have a prior felony conviction, it's felon in possession. And that was one of the arguments that the prosecutor made in closing argument, that Dishner's own testimony convicts him of that, which is probably why his trial attorney conceived of that. That's what it was. There was no way to get around it except with choice of evils. But I think what we have to remember here is that we're not talking about the original trial, the original jury, all that stuff. It has to be remembered in the context of the post-conviction court's application of Strickland v. Washington in determining whether trial counsel erred by not interviewing Velma Smith. That's not really an issue here either because the post-conviction court found that trial counsel should have interviewed her. We have not contested that at this point. So the only issue is whether Petitioner's case was prejudiced when Velma Smith did not come and testify. And our view is that the post-conviction state court finding that she would not have been a credible witness is supported by the record. That's binding on the district court. Was the issue whether or not the judge would have found her credible or whether or not one of the jurors might have found her credible? I don't think there's any case law that says the post-conviction court or a federal habeas court has to assume that the jury would find the evidence to be credible. I think in a lot of the cases that's what they assume when they do their analysis. But I don't think there's any case that says that the post-conviction court has to assume and cannot make a credibility finding when a petitioner brings in a witness. It's not that he has to assume it. May he assume that because he doesn't find her credible that every juror will agree with him. And are those two findings the same? When you say, I don't find her credible, is that saying, and neither would any juror? I'm not sure. And I don't think there's any cases that explain that. Well, isn't that a critical difference? I mean, a judge can't enter a directed verdict because of his assessment of the evidence. The judge has to defer to the jury on that. Now, beyond a certain point, a judge can conclude no reasonable juror could have found and set aside a jury's verdict. But those are two very different standards. And, again, what troubles me here is that I can't tell for sure that the Oregon court applied the standard that gave proper deference to the jury's right to make that determination. I think what you said is correct if we're at the jury trial level. Once we get into the collateral proceedings, and this is a question that came up on the direct appeal, which I also handled, and that's what one of the judges wanted to know. But his question was, how else can the post-conviction court make the decision that it has to make unless it weighs the credibility of a witness that's testifying before him? And I think it's once you get a step away from the jury trial, the judge has more leeway in making the credibility findings, and it carries more weight. But what I want to say is in this case it doesn't really make any difference because if you use the same analysis that was used in Riley v. Payne and all these other cases that are in the red brief, even if you say that the jurors would have believed everything Velma Smith said, it still wouldn't have assisted Petitioner's case here because her testimony contradicts Petitioner's description of what happened. Her testimony at the post-conviction court is contradicted by what she affirmatively told the police. She told the police Petitioner's son left the apartment when he saw his father going to the closet to get the shotgun. Petitioner cocked the shotgun, and then it went off. That's not what she said at the post-conviction trial. Post-conviction she says, oh, the son was already gone because we helped. We pushed him out of the apartment and closed the door. Then Petitioner went and got the gun out of the closet, laid it on the ironing board. He opened it up, apparently, because she could see the shells, and then it went off. Now, those are two really different stories, and that would not have been helpful. I think the post-conviction court was justified when it also found that her testimony— Wasn't that true in Riley also? I'm sorry? Wasn't that true in Riley also? I don't think so. I think Riley is different because what the missing witness in Riley told the police, it wasn't the same story, but what he told them was not an affirmative discussion of what he says happened. What he told them was, I don't know anything, and I think that's different from— And then he comes in in the post-conviction proceeding and says, this and this and this happened, which was exactly consistent with what the Petitioner's story of events was. So I think Riley is really distinguishable from this situation. Based on the differences in Velma Smith's testimony, the Petitioner's testimony, what she told the police, all of those factors go into a finding, the post-conviction's finding, that even though trial counsel should have interviewed her, the Petitioner's case ultimately was not harmed by her not being there to testify at trial. And that, I think, is a reasonable application of Strickland v. Washington. What did she tell the police that contradicted her testimony at the state habeas hearing? She told the police that he got a gun out of the closet and shot it off after the son ran out of the house. There's a second report. At ER 313, she told the police—this is the way the police wrote it, was that the son fled the apartment when he saw Petitioner going to the closet to get the gun. Everybody knew the gun was there because the door was open. Everyone could see it. That's what Velma Smith says. That's what Petitioner says. Did she admit she told the police that? I'm sorry? Did she agree that she told the police that? At the post-conviction hearing, she couldn't remember having talked to two police officers. She didn't say, I never told them that. She just couldn't remember if she talked to them or not. Room 313 says Sanders cocked the shotgun, and the shotgun then fired into the front door of the apartment. And said that Sanders shot or pulled the trigger or something. So I'm not—I mean, I hear what you're saying, but I also don't know that a police officer's rendition in that language, which is actually a little peculiar, is so clearly contradictory that it leads inevitably to the decision that nobody's going to believe what she has to say if she'd had a chance to testify at trial. That's what I think, is that I think they are contradictory statements. And that's the main reason that I think it's different from Riley v. Payne. And unless there are any other questions, I think I've said everything I need to. Thank you. I'd like to make two brief points. First, the state incorrectly argues that no case is held that one must credit the missing witness's testimony in order to weigh its effect on the verdict and determine whether a new trial should be granted. That's exactly what Riley held. Because at page 1322, this court concluded that the state court commissioner's focus on the witness's credibility was error under the AEDPA. But there again, there was no testimony taken. He was looking at a piece of paper and had to assume it's true. And I don't believe live testimony makes any difference. Suppose she said, aliens from a distant planet invaded the home and startled the defendant and caused the gun to go off by accident. Could the judge say, gee, you know, that has to go to the jury because someone might believe that or have to assume that's true? I think that the court could look at that testimony and how weak it is and decide that it doesn't change the totality of the evidence that the jury considered. My time is up, but I'd like to, if I may, refer the court to Ms. Smith's testimony at page 221 of the excerpt of record. She did dispute the words used by the police officer. She said that she wouldn't have said ran out of the house to the police officer because he walked out. And she disputed that she said that he shot it off because she recalled that it went off as he tried to unload it and that she did not think it was a deliberate effort to shoot it unloaded. Thank you very much. Thank you, counsel. Thank you very much. The case is adjourned. You will be submitted.
judges: Reinhardt, Silverman, Clifton